**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RYAN HAAS<br>302 Cedar Waxwing Drive<br>Warrington, PA 18976 | : <br> : <br> : <br> : | CIVIL ACTION |
| Plaintiff, | : <br> : | |
| | : | No.: |
| v. | : <br> : | |
| GWYNEDD MERCY UNIVERSITY<br>1325 Sumneytown Pike<br>Gwynedd Valley, PA 19437 | : <br> : <br> : | **JURY TRIAL DEMANDED** |
| Defendant. | : <br> : <br> : | |

<u>**CIVIL ACTION COMPLAINT**</u>

Plaintiff, Ryan Haas, by and through his undersigned counsel, hereby avers as follows:

I.     <u>**INTRODUCTION**</u>

1.     Plaintiff has initiated this action to redress violations by Gwynedd Mercy University ("Defendant") of Title VII of the Civil Rights Act of 1964 ("Title VII" - 42 U.S.C. §§ 2000e, *et. seq*.), the Americans with Disabilities Act ("ADA" – 42 U.S.C. §§ 12101 *et. seq.*), and the Pennsylvania Human Relations Act ("PHRA" – 43 P.S. §§ 951 *et seq.*).[1]

2.     Plaintiff asserts herein that he was, *inter alia*, unlawfully subjected to discrimination, a hostile work environment, and retaliation in violation of these statues.

II.     <u>**JURISDICTION AND VENUE**</u>

2.     This Court, in accordance with 28 U.S.C. § 1331, has jurisdiction over Plaintiff's claims because this civil action arises under laws of the United States.

---

[1] Plaintiff identifies that he will pursue PHRA claims herein for notice purposes only. He omits such claims in the Count Section of this Complaint. Plaintiff will move to amend the instant lawsuit to include PHRA claims upon completion of administrative exhaustion (or waiver of exhaustion by Defendant).

3.      This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

4.      Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district, and in addition, Defendant is deemed to reside where it is subject to personal jurisdiction, rendering Defendant a resident of the Eastern District of Pennsylvania.

5.      Plaintiff is proceeding herein under Title VII and the ADA (among other claims) and has properly exhausted his administrative remedies with respect to such claims by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety (90) days of receiving a notice of dismissal and/or right to sue letter from the EEOC.

### III.    PARTIES

6.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7.      Plaintiff is an adult individual, with an address as set forth in the caption.

8.      Defendant operates as private university spanning a 160-acre campus with more than 500 employees.

9.      Defendant, as used herein, should be construed to include all parent, subsidiary, and affiliated entities which may properly be considered Plaintiff's single, joint and/or integrated employers.

2

10. At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## IV.   FACTUAL BACKGROUND

11. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

12. Plaintiff was hired by Defendant on or about June 11, 2024 (an approximate date).

13. Plaintiff was initially hired as a part-time public safety officer.

14. By in or about December of 2024, Plaintiff was promoted to a Public Safety Supervisor (and had become employed as a full-time employee).

15. Some of the relevant management during Plaintiff's period of employment included the following: (1) David Caristo ("Caristo") – Assistant Director of Public Safety; (2) Joanna Gallagher ("Gallagher") – Chief of Public Safety and Security; (3) Dianna Sofo ("Sofo") – Assistant Vice President, Human Resources; and, (4) Jennifer Ginnetti ("Ginnetti") – Vice President for Finance and Administration and CFO.

16. When Plaintiff was promoted in December 2024, it was at the urging of Defendant's management. Of course, they shared that Plaintiff did a great job, but he had also been repeatedly told that there was tremendous short staffing and they needed him to step into the role virtually immediately.

17. Many of the employees working in security had law enforcement or military backgrounds. Plaintiff mentions this because there was an expectation of professionalism, decorum, work ethic, and discipline.

18.    In or around the timeframe of Plaintiff's promotion, an individual named Edward Buchanan ("Buchanan") was hired by Defendant. Plaintiff believe he was hired on or about December 26, 2024.

19.    Plaintiff came to understand Buchanan performed a number of various jobs over the years but lacked any meaningful experience in security.

20.    Following Buchanan's separation from Defendant (discussed more *infra*), upon information and belief he went on to work as a front-desk agent at a Hilton hotel (exhibiting his lack of security experience or interest).

21.    Buchanan was extremely crude, unprofessional, and what Plaintiff would describe as an HR nightmare at any employer.

22.    To use a cliché, there was obviously something off about Buchanan.

23.    Buchanan constantly made inappropriate sexual comments and sexual remarks. He even did so in front of and about young girls (students). The kinds of things he was saying were really offensive to Plaintiff (and such actions or gestures were frequent).

24.    Plaintiff expressed numerous complaints to Gallagher, and he asked to have Buchanan terminated (since he was supposed to be a supervisor).

25.    Plaintiff mentioned the phrase "sexual harassment" on several occasions to Gallagher, pressing for action to be taken against Buchanan (expressing he should be released during his probationary period).

26.    Gallagher would tell him Defendant was too short staffed, needed manpower, and basically kept telling Plaintiff to just ignore Buchanan.

27.     To Plaintiff's knowledge, other staff had **also** complained about Buchanan, and Gallagher was perpetuating a hostile work environment by refusing to intervene due to her concerns of "short staffing."

28.     As a result of Plaintiff trying to counsel Buchanan directly and to have him stop his egregious sexual commentary, he was more abusive towards Plaintiff as his superior. The *first adverse action* for which Plaintiff seek relief in this Charge is for the hostile work environment Plaintiff was forced to endure by Buchanan.

29.     In or about March of 2025, Plaintiff was constructively demoted (the *second adverse action* for which Plaintiff seek relief). Plaintiff could not continue to work as a supervisor of Buchanan because of his non-stop unwelcome sexual commentary and misbehavior towards him, the toll it was taking on him mentally, and because Plaintiff faced legal exposure as his supervisor for not being permitted by Gallagher to terminate him.

30.     Thus, Plaintiff had to resign from his supervisor role and take a Public Safety Officer ("PSO") role working full-time instead of as a supervisor.

31.     Plaintiff had also shared that he has some mental health disabilities with Gallagher, explaining that Buchanan was exacerbating Plaintiff's health problems.

32.     Gallagher totally disregarded such concerns, ultimately forcing him to step down from the supervisory position.

33.     Plaintiff believe Buchanan was ultimately terminated involuntarily (in or around May 2025) several months after Plaintiff stepped down from a supervisory role when a student of Defendant complained of sexual harassment to administration officials other than Gallagher.

34.     Defendant, at the direction of Gallagher, retained someone Plaintiff had perceived as a predator and sexual harasser.

35.     Gallagher was so inept, ineffective, and reckless that she had not even undertaken any actions to limit or ban Buchanan from the premises after he was terminated - - a termination that followed numerous employee complaints and apparently student concerns.

36.     Buchanan ostensibly perceived Plaintiff as being a catalyst or proponent for his termination. Thus, Buchanan was sending him threatening text messages and appearing on campus telling other officers ill intentions towards him (which were threatening).

37.     Between May and July of 2025, when Plaintiff was being harassed by Buchanan and he was freely entering the campus, Plaintiff repeated his complaints to Gallagher and others that he was a sexual harasser and Plaintiff was being retaliated against for pressing for his termination for his abusive sexual commentary. *Gallagher handled this entire situation terribly*.

38.     Plaintiff suffers from PTSD, a brain injury, depression, anxiety, OCD, bipolar disorder, and Plaintiff has a history of alcoholism treatment. These medication conditions qualify as disabilities under the ADA as they substantially interfere (at times) with one or more major life activities, such as concentrating, communicating, and working.

39.     In the April to July of 2025 timeframe, Plaintiff was taking off intermittent days for mental health treatment or mental health flareups. Plaintiff was honest and shared such information with his management, particularly because he was not being medically accommodated with support to ban someone threatening him from campus (even aside from Buchanan being a potential danger to students).

40.     Each time Plaintiff missed any time from work, he typically provided a medical note that identified he was cleared to resume working. Thus, Plaintiff was transparent and communicative.

41. In the summer of 2025, Plaintiff was really distressed that Gallagher: (a) perpetuated a hostile work environment; (b) ignored repeated complaints about a known sexual harasser; (c) permitted a terminated sexual harasser to freely come and go all over campus (even walking by her on campus after his termination); (d) put students at risk by her inaction; and, (e) putt Plaintiff's physical well-being in danger and exacerbating his health problems by not properly restricting Buchanan from campus (after knowledge of his threats).

42. Thus, Plaintiff attempted to escalate his concerns by requesting a meeting with Ginnetti.

43. When Plaintiff met with Ginnetti in the early summer of 2025 (in or around July), he complained about everything he outlined above in this Complaint (that had occurred as of their meeting). Plaintiff also lodged other concerns about Gallagher's impropriety.

44. In addition to sharing everything about Buchanan, Plaintiff outlined a separate matter and concern regarding Daniel Jordan ("Jordan") (a/k/a Counselor Dan), a long-time employee of Defendant who worked as a Counselor.

45. In or about January of 2025, a female student was in crisis and her boyfriend (who was also a student) was present. Plaintiff is intentionally omitting name references of students in this Complaint for privacy purposes.

46. When Plaintiff appeared on scene, he met Jordan at the door of the building and escorted him to the Student Health lobby where the students were.

47. Jordan was the on-call counselor in the evening in the event of an emergency.

48. Plaintiff had to step away for a moment for logistics with their dispatcher, and immediately upon returning he witnessed Jordan's hands around the neck of the male choking him.

49.    Jordan had the male pinned by his neck against a glass window in the reception area.

50.    From Plaintiff's observations, he formed the opinion that Jordan was likely intoxicated, had escalated an altercation with a young male student, and had assaulted the male student. The young male was defending himself.

51.    It was also – in Plaintiff's opinion – extremely improper for Jordan to be under the influence while on call in his role wherein he is to protect students.

52.    Plaintiff tried to present an accurate statement on behalf of the male student (to Gallagher), but he was not privy to proceedings within the school.

53.    Plaintiff came to believe though that his information, statement, and (potential) witness testimony was not used or disclosed.

54.    Instead, Defendant proceeded with a case against the male student as if he acted improperly towards or against Jordan.

55.    Plaintiff informed Ginnetti of Gallagher's improprieties and failures with regard to Buchanan **and** Plaintiff's concerns that Gallagher concealed critical evidence and had the male student falsely prosecuted (through internal school hearings).

56.    Had Plaintiff been contacted or notified, Plaintiff would have testified on behalf of the male student against Jordan in any hearing(s).

57.    This had to be extremely traumatic for that young male facing an institution leveraging claims against him without disclosing an exculpatory witness employed and known to Defendant.

58. In any event, as a result of Gallagher knowing Plaintiff escalated complaints above her and attempted to expose her unlawful and inappropriate behavior, she became overtly hostile towards him (even speaking to him highly aggressively and in a nasty tone).

59. Plaintiff was thereafter issued his first discipline, a "final warning." Plaintiff was told he communicated disrespectfully.

60. Gallagher had begun working with Sofo to create a paper trail to get rid of him.

61. Sofo was also being aggressive towards him in communications as well.

62. Plaintiff believes his complaints to Ginnetti (and ongoing concerns in general) reflected negatively on both Ginnetti and Gallagher (prompting retaliation against him).

63. On or about August 12, 2025, Sofo met with Plaintiff around 10 AM. The conversation (from a summary standpoint) went as follows:

a. Sofo told Plaintiff that because he had brought up medical issues and had medical absences, he needed to go through Defendant's Employee Assistant Program ("EAP"). Plaintiff understood that EAP is a mental-health counseling program administered by Defendant.

b. Plaintiff told Sofo that anytime he had any medical time off from work, he had been medically cleared by Plaintiff's physician. Plaintiff questioned whether it was okay for an employer to require an employee to undergo mental health counseling.

c. Sofo suggested there were concerns with Plaintiff's mental wellbeing. Plaintiff asked what she meant, but she would not elaborate. Plaintiff told her that he could meet with his physicians and get any medical clearance

notes she believes are necessary. Sofo declined and told Plaintiff that she wanted him to go through counseling by Defendant's EAP.

d.      Plaintiff exclaimed that he feel this was retaliation for him making complaints about "sexual harassment" and other matters. Sofo responded there was never anything "formal" about sexual harassment concerns by him.

e.      During their meeting, Sofo was loud, abrasive, demanding, and outright rude to Plaintiff. The gist of her aggressive directive(s) to Plaintiff was that he needed to agree to EAP counseling **and** to immediately sign an "Authorization for Release of Confidential Information" giving EAP permission to tell Defendant's management (which expressly included Sofo) everything about Plaintiff's mental health counseling (through EAP).

f.      Sofo knew Plaintiff had disabilities, and he even asked to use the bathroom during their meeting. Sofo said he was not permitted to take a bathroom break and further told him to agree to EAP, sign the form, or he was going to be deemed quitting or resigning his job. She said unless Plaintiff agreed and signed, he was done at Defendant (as in terminated). Sofo asked him several times if he was quitting while pressuring him to just agree and sign during the meeting. Plaintiff honestly could not believe this type of bullying and abuse was occurring by a higher-level HR Administrator of Defendant. Sofo acted like an angry parent instead of an HR professional.

g.      Plaintiff expressed several concerns that he felt what Sofo was doing was "retaliation." Plaintiff finally said: "I am not refusing anything." Plaintiff said he need to consult his own doctors before he could agree to a

10

different type of mental health treatment or EAP. Plaintiff said he did not want to do anything contrary to what his doctors might recommend. Plaintiff said he would consider signing as soon as he was able to talk to his doctors and asked Sofo to just treat him as on medical leave since she was refusing to let him keep working. Plaintiff said he would try to see his doctors as quickly as possible.

h.    Sofo told Plaintiff that if he did not agree to EAP and sign the release for his medical information that day, he would be deemed to have resigned. Plaintiff told Sofo on several occasions that he was not refusing but that he needed more than that day to consider something so significant. It was a really big deal to tell someone (Plaintiff) they have problems with their mental health, they needed to choose a counseling service for them, and to make the employee (him) sign a release to share all of his personal information with the management he feel is being retaliatory.

64.    Sofo caused Plaintiff to have an anxiety attack in their meeting, and she prohibited the common decency of him using the bathroom.

65.    All Plaintiff needed was what he would have estimated several days to consult his own mental health professionals (depending upon when he could get an emergency medical appointment) about whether it would be harmful for him to go through EAP counseling and whether he should sign a release of his medical information.

66.    Instead, Plaintiff received an email extremely early in the morning on August 13, 2025 (less than 24 hours later), with an attached letter terminating Plaintiff's employment for "deciding [he] no longer wished to be employed" because he did not abide by the "mandatory Employee Assistance Plan referral."

67.    Plaintiff thus seeks relief for the ongoing hostile work environment up until his termination (*the third adverse action*) and for his termination from employment (*the fourth adverse action*).

68.    Plaintiff was demoted, mistreated, and terminated for discriminatory and retaliatory reasons in violation of Title VII and the ADA. In multiple instances, Plaintiff was the victim of non-accommodation as well.

## COUNT I
## <u>Title VII Violations</u>
### [1] Sexual Harassment/Hostile Work Environment; [2] Retaliatory Hostile Work Environment; and [3] Retaliation

69.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

70.    Plaintiff was subjected to a hostile work environment by Defendant's supervisors and staff failing to take appropriate remedial action to address the severe and/or pervasive sexual harassment perpetrated by Buchanan against female coworkers and students.

71.    Plaintiff specifically opposed, rejected, and complained of Buchanan's inappropriate sexual comments/advances/gestures and comments; however, his concerns were dismissed and the hostile work environment only grew worse (such that he was subjected to a hostile work environment and retaliation for opposing/complaining about the same).

72.    As a result of Defendant's abject failure to cure an obvious hostile work environment and instead subject him to further retaliation, Plaintiff was constructively demoted from his supervisor position and terminated from his employment because of: [1] the severe sexual harassment and discrimination by Buchanan that he was forced to endure; [2] the hostile treatment he received in retaliation for rejecting and complaining about Buchanan's sexual

harassment; and, [3] Defendant's failure to remedy such sexual harassment/discrimination, despite Plaintiff's complaints and objections regarding same (as discussed *supra*).

73.    The aforesaid actions violate Title VII.

## COUNT II
## Violations of the ADA
### ([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; [3] Failure to Accommodate)

74.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

75.    Plaintiff suffers from qualifying health conditions under the ADA, which affected his ability (at times) to perform some daily life activities (set forth *supra*).

76.    Despite Plaintiff's aforementioned health conditions and limitations, he was still qualified and able to perform the essential duties of his job well with Defendant.

77.    Prior to his constructive demotion and pretextual termination, Plaintiff disclosed his aforementioned disabilities/serious medical conditions and need for accommodations to Defendant's management and was subjected to animosity and antagonism regarding the same, such that she was subjected to a discriminatory and retaliatory hostile work environment.

78.    Defendant failed to engage in any meaningful interactive process, refused to grant Plaintiff's requests for reasonable accommodations, and terminated him in order to avoid having to accommodate him.

79.    Plaintiff therefore avers that his actual/perceived disabilities or record of impairment were a motivating/determinative factor in the constructive demotion and termination of his employment with Defendant.

80.    Plaintiff also avers that he was constructively demoted and terminated in retaliation for engaging in protected activity (requesting accommodations) under the ADA.

13

81.    Finally, Plaintiff avers that he was constructively demoted and terminated as a direct result of Defendant's refusal to engage in the interactive process and/or accommodate him.

82.    Defendant's actions as aforesaid constitute violations of the ADA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.    Defendant is to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B.    Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, and benefits;

C.    Plaintiff is to be awarded actual damages, as well as damages for the pain, suffering, and humiliation caused by Defendant's actions;

D.    Plaintiff is to be awarded liquidated and/or punitive damages;

E.    Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate;

F.    Plaintiff is to be awarded the costs and expenses of this action and a reasonable attorney's fees as provided by applicable federal and state law; and

G.    Plaintiff is to receive a jury trial as requested in the caption of this lawsuit.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**


By: _____
Ari R. Karpf, Esq. (91538)
Eight Neshaminy Interplex
Suite 210
Feasterville-Trevose, PA 19053
(215) 639-0801
akarpf@karpf-law.com

Date: May 1, 2026

15

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Ryan Haas | : | CIVIL ACTION |
| v. | : | |
| Gwynedd Mercy University | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.          ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.          ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)          ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.    (x )

| | | |
|---|---|---|
| 5/1/2026 | | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

10/2024

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: <u>Defendants place of business</u>

---

***RELATED CASE IF ANY:*** Case Number:_____ Judge:_____

1.  Does this case involve property included in an earlier numbered suit?                                                     Yes ☐

2.  Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?       Yes ☐

3.  Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?   Yes ☐

4.  Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same     Yes ☐
    individual?

5.  Is this case related to an earlier numbered suit even though none of the above categories apply?                Yes ☐
    If yes, attach an explanation.

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

**A.  *Federal Question Cases:***

☐  1.  Indemnity Contract, Marine Contract, and All Other Contracts)
☐  2.  FELA
☐  3.  Jones Act-Personal Injury
☐  4.  Antitrust
☐  5.  Wage and Hour Class Action/Collective Action
☐  6.  Patent
☐  7.  Copyright/Trademark
☐  8.  Employment
☐  9.  Labor-Management Relations
☒  10. Civil Rights
☐  11. Habeas Corpus
☐  12. Securities Cases
☐  13. Social Security Review Cases
☐  14. Qui Tam Cases
☐  15. Cases Seeking Systemic Relief  **\*see certification below\***
☐  16. All Other Federal Question Cases. *(Please specify):*_____

**B.  *Diversity Jurisdiction Cases:***

☐  1.  Insurance Contract and Other Contracts
☐  2.  Airplane Personal Injury
☐  3.  Assault, Defamation
☐  4.  Marine Personal Injury
☐  5.  Motor Vehicle Personal Injury
☐  6.  Other Personal Injury *(Please specify)*:_____
☐  7.  Products Liability
☐  8.  All Other Diversity Cases:  *(Please specify)*_____
       _____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒  Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐  None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

HAAS, RYAN

**DEFENDANTS**

GWYNEDD MERCY UNIVERSITY

**(b)** County of Residence of First Listed Plaintiff  Bucks
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  Montgomery
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & | ☐ 367 Health Care/ Pharmaceutical | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander | Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | Liability | | ☐ 835 Patent – Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☒ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application ☐ 465 Other Immigration Actions | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 550 Civil Rights ☐ 555 Prison Condition ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
ADA (42USC12101); Title VII (42USC2000)

Brief description of cause:
Violations of the ADA, Title VII and the PHRA.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE  5/1/2026

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____